UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CIRCULO de la HISPANIDAD, INC.,

          Plaintiff,

- against -

THE CITY OF LONG BEACH; LONG BEACH
POLICE DEPARTMENT; EDWIN EATON,
individually and in his official capacity as the City
Manager of the City of Long Beach; EUGENE
CAMARRATO, individually and in his official
capacity as Special Assistant to the City Manager
of the City of Long Beach;

          Defendants.
-----------------------------------------------------------X

MEMORANDUM AND ORDER

00-CV-1463 (NGG)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ NOV 0 6 2003 ★
BROOKLYN OFFICE

GARAUFIS, District Judge.

Now before me are the following motions: (1) The City of Long Beach and Edwin Eaton's ("Defendants'") motion for a judgment as a matter of law pursuant to Fed. R. Civ. P. 50, or alternatively a new trial pursuant to Fed. R. Civ. P. 59, or alternatively a remittitur in the amount of damages; (2) Circulo de la Hispanidad ("Plaintiff's") motion for attorney's fees and costs pursuant to 42 U.S.C. § 1988. For reasons explained below, Defendants' motions are DENIED, and Plaintiff's motion is GRANTED, in the amount of $256,405.

**Factual Background**

The facts will be presented in the light most favorable to the Plaintiff, whose version of events the jury credited in finding for them. This lawsuit arose out of Defendant Eaton's decision (as city manager of the City of Long Beach) to cancel the XV Hispanic Festival by the

Sea ("Festival"), a festival organized by the Plaintiff to celebrate Hispanic culture and raise money for scholarships for Hispanic youth. The Festival was scheduled to take place over Memorial Day weekend in 1998. (Plaintiff's Memorandum of Law at 1). Specifically, the Festival was scheduled to take place from Thursday night, May 21, 1998 through Sunday, May 23, 1998. Due to poor weather, attendance at the festival on Thursday night was sparse. Pl. Mem at 7. Nothing out of the ordinary occurred at Kennedy Plaza, where the festival occurred, except that some African-American youths were escorted by police out of Kennedy Plaza from in front of the stage. Pl. Mem. at 7.

On Friday morning, after receiving this approximate description of the previous evening's events at Kennedy Plaza from assistant city manager Camarrato and Commissioner Brown (as well as hearing a report that someone with no apparent connection with the Festival had discharged a gun on the beach), Eaton decided to cancel the rest of the Festival, ostensibly because cancelling the festival was necessary to protect public health and safety. Pl. Mem. at 10. Upon learning of the cancellation that Friday morning, Plaintiff's employees went to City Hall and were told by Eaton that the gun discharge on the beach was the reason for the cancellation. Pl. Mem at 12. Circulo representatives pleaded with Eaton not to cancel the festival and suggested alternatives to cancellation that had been used for other events, such as shutting off the sale of alcohol. Eaton rejected all of these suggestions and told Circulo that only the amusement park rides could go on, but every other aspect of the Festival would be cancelled. Pl. Mem. at 12. Circulo found this suggestion unacceptable, and Eaton cancelled the whole event.

Circulo sued the listed Defendants under 28 U.S.C. § 1983 for violations of its First Amendment and Fourteenth Amendment rights. A trial was held in Central Islip, New York in

July of 2002, and the jury returned a verdict in favor of the Plaintiff against Eaton and the City of Long Beach on the First Amendment claim, and against the Plaintiff on all other claims. The jury awarded the Plaintiff $300,000 for damages to its business reputation and $125,000 in damages for wasted expenses and lost profits, against both Eaton and Long Beach. The jury assessed $50,000 in punitive damages against Eaton. The motions currently before me followed.

**Standards for Deciding the Defendants' Motions**

Defendants' motion under Rule 50 is governed by the following standard:

> [J]udgment [as a matter of law] is reserved for those rare occasions when there is "such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result of sheer surmise and conjecture" or the evidence must be so overwhelming that reasonable and fair minded persons could only have reached the opposite result.

Sorlucco v. New York City Police Dept., 971 F.2d 864, 871 (2d Cir. 1992) (quoting Stubbs v. Dudley, 849 F.2d 83, 85 (2d Cir. 1988). The standard under Rule 50 "mirrors" that for a motion for summary judgment under Fed. R. Civ. P. 56. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986). A lower standard applies to a motion for a new trial or a remittitur, namely that the trial court should grant a new trial or remittitur when the court is convinced that the jury has reached a seriously erroneous result, or that the verdict is a miscarriage of justice. See Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970 (2d Cir. 1987).

**Analysis of Defendants' Arguments**

I address Defendants' various arguments in turn. Defendant argues that the First

3

Amendment claim must fail, because Eaton's only reason for cancelling the festival was the threat to public safety. This argument was exactly the argument that the jury rejected, and it had perfectly adequate reasons for doing so. Based upon the evidence admitted at trial the jury could have found Eaton and other defense witnesses not credible, and that there was no threat of gang violence, let alone a threat that would justify cancelling the festival. The Defendants also argue that the verdict must be set aside because the jury did not find that Eaton had an "unconstitutional motive" for his actions. This argument also makes little sense. The charge to the jury correctly stated the law on the First Amendment as it applied to the situation, and nowhere did the charge require the jury to find that Eaton had some kind of political pretext for his actions. Defendants had the burden of showing that their actions were narrowly tailored to serve a significant and legitimate state interest. The jury found, on the basis of the adequate evidence before it, that the Defendants did not meet that burden.

Eaton argues that he is entitled to qualified immunity as a matter of law because a "particularized proffer of evidence of unconstitutional motive" on the part of the public official must be presented in order to defeat qualified immunity, citing Blue v. Koren, 72 F.3d 1075, 1082-84 (2d Cir. 1995). Eaton either misunderstands or purposefully misconstrues the case he cites. As Koren later states, at 1084:

> If [a clearly established right is at stake], the court must then address whether the conduct was objectively reasonable. *If not*, the motion [for summary judgment, equivalent to this Rule 50 motion, on the basis of qualified immunity] must be denied. *If the conduct was objectively reasonable,* a conclusory proffer of an unconstitutional motive should not defeat the motion for summary judgment. The reasonableness of the conduct is itself substantial evidence in support of the motion and requires in response a particularized proffer of evidence of unconstitutional motive. (Emphases added).

4

The jury was entitled to believe, on the basis of the facts before it at trial, that Eaton's conduct was not objectively reasonable. The jury was specifically charged with deciding whether "objectively reasonable" public officials would have known that Eaton's actions would violate First Amendment rights. Proof of unconstitutional motive is only necessary to defeat summary judgment if the conduct alleged is objectively reasonable. Eaton's actions, according to the jury on the basis of facts that it found, were not objectively reasonable, so he is not entitled to qualified immunity.

The City of Long Beach argues that as a matter of law it may not be subject to <u>Monell</u> liability in this case, because such liability would mean that every decision acted upon by a person such as Mr. Eaton, "constitutes a policy with implications to (sic) the city." Defendants' Memorandum of Law at 6. The City of Long Beach made the same argument in their motion for summary judgment, and this court reiterates what it said in dismissing that motion: The Supreme Court held in <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 468, 480 (1986) that "Municipal liability may be imposed for a single decision by a municipal policymakers under appropriate circumstances." It is not necessary for a plaintiff to establish a repeated practice or consistent policy when the allegedly unconstitutional act was taken by someone with final decisionmaking power. Mr. Eaton held just such power in Long Beach, and it was his decision to cancel the festival. As the court said in <u>Pembaur</u> at 481:

> [A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood.

5

This situation presents a paradigmatic example of exactly when municipal liability should apply under Pembaur, so the City's argument fails.

The Defendants argue that insufficient evidence was submitted to the jury to support reputational damages of $300,000. This damage award was supported by evidence before the jury, including:(1) testimony that vendors with whom Circulo had contracted to sell goods at the Festival were angry with Circulo over last-minute cancellation of its orders; and (2) news coverage of statements by Eaton and other Long Beach officials blaming Circulo for the cancellation and giving an explanation for the cancellation that the jury could have found to be false. The Defendants also challenge the $125,000 figure for out-of-pocket damages and lost profits. The jury, however, also had evidence before it to support this figure, including: (1) testimony on the amount of income that Circulo would have made through the festival; (2) expenses Circulo occurred in preparation for the festival; (3) money Circulo had to refund because of the cancellation; and (4) the value of staff time spent on the festival.

Finally, Eaton argues that punitive damages should not have been charged or submitted to the jury, because there was no history of animosity between Eaton and the Plaintiff, no suggestion that he went out of his way to retaliate against the Plaintiff, and no evidence of malice on Eaton's part. Eaton argues that the sole reason the jury awarded punitive damages was in response to the repeated and allegedly prejudicial reference to newspaper articles, editorials, and other media accounts that "inflamed" the jury but were unrelated to Eaton's "reasonable" response on May 22, 1998. Eaton also argues that allowing punitive damages would "chill a public official's ability to act in good faith to protect the public safety and welfare." Def. Memo. at 6. The problem with Eaton's argument is that the jury had the right to find that Eaton's

response was anything but "reasonable." In fact, the jury did find that it was unreasonable, as well as purposeful and without regard for the Plaintiff's constitutional rights. The jury also could have found that Eaton was less than truthful in his statements about the cancellation, both in statements to the press and on the witness stand. The punitive damages award against Eaton stands.

**Plaintiff's Motion for Fees and Costs**

As the "prevailing party" in this litigation the Plaintiff is entitled to attorney's fees under 42 U.S.C. § 1988. Notwithstanding the fact that Plaintiff did not succeed on all of its claims against all of the Defendants, Plaintiff's attorney, Jonathan Moore, achieved an "excellent result" for his client, so the fee award should not be reduced to account for claims on which Plaintiff was unsuccessful. Hensley v. Eckerhart, 461 U.S. 424 (1983). Cf. Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). This court has broad discretion in determining the amount of a reasonable fee award in this case. See Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997).

To begin its fee determination, the court first must establish a "lodestar" figure, by multiplying the number of hours the attorney worked by a reasonable hourly rate. See Hensley, 461 U.S. at 433. I have determined that a reasonable hourly rate for Mr. Moore is $350 per hour. The court made this determination by: (1) assessing the going rate for legal services in the Eastern District and Southern District of New York for cases of this type; (2) acknowledging the difficulty of the work required (a significant portion of it in preparation for trial and for the trial itself); (3) taking into account Mr. Moore's experience and credentials; and (4) observing the

level of skill with which Mr. Moore performed in this litigation. I have also determined that $60 per hour is a reasonable rate for Mr. Moore's summer associate, Ms. Levine. Further, I have determined that the number of hours submitted by Mr. Moore on behalf of himself and his summer associate is reasonable for a case of this complexity and duration. Finally, I have determined that Plaintiff's submission of costs is reasonable and unobjected to, and I therefore grant costs to the Plaintiff in the amount of $7, 930.

The total fees and costs awarded to Plaintiff is therefore as follows:

Fees for Moore: 545.6 hours (on merits of litigation to 9/26/02) @ $350 per hour = $190,960

Fees for Moore: 43.5 hours (on fee determination to 9/26/02) @ $350 per hour = $ 15,225

Fees for Moore: 85.4 hours (on all matters 9/26/02-7/18/03) @ $350 per hour = $ 29,890

Travel time for Moore: 46 hours @ $175 per hour = $ 8,050

Fees for Summer Associate Levine: 72.5 hours @ $60 per hour = $ 4,350

Costs: = $ 7,930

Total Attorneys Fees & Costs = $ 256,405

**Conclusion**

For the reasons explained above, Defendants' motions for judgment as a matter of law, for a new trial, and for remittitur are DENIED. The judgment of compensatory damages in the amount of $425,000 against defendants Eaton and the City of Long Beach is affirmed, and the judgment of $50,000 in punitive damages against Eaton is affirmed. Plaintiff's motion for attorney's fees and costs is GRANTED, in the amount of $256,405.

SO ORDERED.

Dated: November 3, 2003
      Brooklyn, New York

NICHOLAS G. GARAUFIS
United States District Judge